Our next case for argument today is 24-1550, Cooperative Entertainment v. Kollective Technology. Mr. Ramey, please proceed. Good morning. My name is William Ramey and I represent the Appellant, Cooperative Entertainment, Inc. If it pleases the Court, may I begin? This is the second time we've been before this Court, still at the pleading stage, not having gone past the pleading stage. I think the important part for this case, we're seeking reversal of a dismissal under Rule 12b-6 where the district court found the invention directed towards conventional items, that it was a conventional invention and therefore didn't suffice to state a claim. We think that the first thing we want to do is get us clear of what the invention is directed to. The claim to invention is the segmentation of the peer notes for content distribution. The peer notes themselves do have the content on them, but the invention is the P2P network, that segmentation, that it aligns different peers together that have the same content, the same pieces of whatever that is, video or data, and it's that content that is then segmented. We find that the district court's order is in contravention to this court's prior order in Cooperative Entertainment v. Collective 50, Fed 4th, 127, 2022, where this court held determining whether the claim network is well understood, routine, or conventional is a question of fact that cannot be resolved at the Rule 12b-6 stage, and the district court erred in resolving that issue against Cooperative. Didn't the court say in the earlier opinion you just alluded to, there are at least two alleged inventive concepts in Claim 1, and one of those is the use, is the requirement of trace routes to be used in content segmentation. We said that, didn't we? Yes, Your Honor. And it seems like your argument to us now is that the claims do not require trace routes to be used in content segmentation. Isn't that what you're arguing to us now? No, Your Honor. That's not. I want to make sure I clear this up. There's two different levels of segmentation. Had I chosen the words, I might have chosen different words, but we're past that point. Before, we're talking about distribution in this claim image. We're purely talking about content distribution, the segmentation of that content at the P2P level. Before something gets to appear, when it's at the CDN, when it's at that lower level before it gets to be distributed, it is segmented. You have a large data file for a large movie, let's just say Star Trek 4 or something like that or Star Wars 4 or New Hope. That might be divided into several different nodes, and then that may be pushed up from the CDN into the P2P level. That initial segmentation is the video files themselves, and so that doesn't use trace routes. As far as I know. Is one requirement of your claims the use of trace routes for content segmentation? Yes or no? Yes, Your Honor. Is that one requirement? My apologies. Yes. And so the finding that we're reviewing, I think, is that you failed to allege that. Pardon me, Your Honor? The finding that we are reviewing is that you failed to adequately allege that the required use of trace routes in content segmentation. Isn't that what we're reviewing? That you failed to adequately allege that? That could be one way of reading the district court's orders. He said he didn't understand how we do trade routes or how we use trace routes to segment content. And we went back and tried to explain how video and data was segmented before it gets up to the P2P network, but I can take the court, if I could, back to the patent itself. It talks about Appendix 00027. It's column 4. Yeah, but you're trying to take us to the merits of whether or not it's required. And I think that what Judge Stark is focused on is that is maybe one of the issues, but first you have to overcome the hurdle of did you make this argument below? Because that's the problem. For example, it doesn't appear to me that you ever argued that gathering information should be interpreted as including segmented content or segmenting content. I don't see where you ever argued that. You've got a lot of stuff on appeal that you're arguing to us, and it seems like it was not argued at the district court despite many opportunities to do so. So I don't know why we would address any of that on appeal. Yes, Your Honor, I think that when you take the 12B6 standard, the life most favorable to the person, to the non-movement, and that's who Collective is at this point. Here we did make the allegation that Collective's network, it's ECDSECN, did provide for content segmentation based on tracery. We've supplied a white paper with that, and that white paper said that it uses a matrix and that that matrix is segmented based on a trace route. And as we know that, we think it's sufficient for the pleading stage. This is before we have collected any evidence. This is early in the process, and we think that should be sufficient. I was taking the court just simply to the patent to explain how the patent talks about that, and that's why we think to tie it to being sufficient for that allegation. If we go back to, if I'm at, Your Honor, back to page 27, column 4, line 52, the content recipient have a pureness established and are defined by the common content they are receiving from the CDN server. The systems and methods automatically identify pure nodes receiving common content and create dynamic networks, communication connection for the pure nodes to transmit the common content to each other, rather than the content being directed from the CDN server directly to each recipient. That's what the invention is. That's a very general description of what the invention is, that it's the actual, the P2P network itself, not the files that are segmented below. We think that by incorporating that white paper shows that we are alleging that they do in fact have that functionality. If we go back, in fact, to what the court's order was in appendix, page 2, right there in the middle of claim 1, the highlighted portion that the district court pointed out, it says wherein the at least one P2P dynamic network is based at least once, based on at least one traceroute, and that's exactly what we said by supplying that white paper. In other words, their matrix, their network that we allege is their P2P network is based on traceroutes. So that's a... But then that claim goes on to say wherein the at least one content delivery server computer is operable to use the traceroute to segment requested content. Isn't that a separate requirement that it's actually using traceroutes to segment content? Yeah, sure. The content being the nodes themselves, though, that's what we were trying to say. That's what the definition of this claim is, it's for the nodes themselves. So you're saying the segmentation of peers by traceroute is ipso facto segmentation of content? Yes, Your Honor. It is. The nodes are the content. They contain the content. And I guess one way to look at this invention is it's, you have a bunch of nodes that are out there. It's going to find the nodes that have the same content, the same video file or pieces of video file, and align and exchange between those, rather than going back to the CDN. So that's how we were trying to define the invention. And I think for the, going back and trying to explain to the district court how the video files themselves were also segmented may have caused the confusion here, that that was probably a place that should have been left a little bit different, but it wasn't. So, yeah, going back to segmenting by traceroute, just as the peer nodes with the same content are segmented based on comparable traceroutes, and that's all that means. So wherever the traceroutes are in the P2P network. And you get this by going, if you go to Appendix 818, paragraph 14, it talks about peer segmentation is based on traceroutes. Peer segmentation. We're not talking about, you know, the content is on the peers. So that is doing the content segmentation at the same time, but it's the peers. Appendix 819, the claim to invention in Paragraph 16 is the distribution of the peer nodes, not the, you know, the peer nodes contain the content, so it's doing both, but it's defined as doing it through the peer nodes. And back to Paragraph 819, or Appendix 819, Paragraph 18, there could be further claims at another step, so you could have quality of service being another part beyond the traceroute that helps further define or segment the peer nodes. And again, this is confirmed at Appendix 818 and Paragraph 13, where it talks about the segmentation of video files, the video and data itself as being the conventional part of this, not the actual peer node segmentation, just the segmentation of the files themselves. Counsel, one advantage that perhaps Judge Stark and I have, having been on this case before, is we get to watch your argument evolve, and I don't think that the argument you're making today reflects at all the arguments you've made in the past, or the arguments you've made before the district court, or what we held in the prior decision. I think that many of the arguments you're making today about how the segmenting has to be at the peer rather than the content, using the traceroute, are directly contrary to what you argued to us in the past, what you argued throughout the district court. You came up with a new and different theory just for us on appeal. I was here before, I saw you before, we had this argument before, and this feels like you're talking about now a whole different patent than what you argued in front of me last time. So I'm really at a loss on how you could possibly prevail and how this is not a completely new theory raised for the first time on appeal. Your Honor, I wish I would have argued that first case before you. I did not. I came in, I was the hand of the case to argue this one, to say when there obviously has been an inconsistency in the use of the terminology in the patent, in the terminology in the second amended complaint. I was brought in after that to see if I could come on and fix this. I apologize to the court. If you thought that I misled you, I'm not trying to do that, I'm trying to explain what the patent is meant to. No, you're, okay, well fair enough, then I'll give you the benefit of the doubt. You're trying to come in and fix the mistakes made by prior counsel for your client in the way that they represented things to us and to the district court, and you just don't get to do that. You're bound by all that, and these arguments you're making here today about segmenting at the peer, those weren't made before at any point in this case. You've made them. Maybe they're good arguments. Maybe they're arguments that your client should have made from jump. Maybe if they'd had you from jump, you'd have made those arguments, but you didn't, and they're just, these are just all new arguments. Your Honor, I don't find them inconsistent with this court's prior opinion, though. I mean, I don't find it, and it is, we still are segmenting based on content. The content is the peer notes. That's The content is the peer notes, or the content's in the peer notes, let's be precise. The content is the peer notes, the peer notes are the content. There's no distinction between, there are two levels of segmentation, right, to getting to what's on the different peer notes, and that's what we were trying to explain to the district court in that second amended complaint, and that seemed to cause confusion, but with the content is I don't understand why the district court was confused. By telling the chief that you think your arguments are not inconsistent, I take it you're conceding they are new arguments. You did not make these arguments to the district court, correct? Judge Stark, my belief is that these are the arguments we made, that they weren't conveyed correctly. We have always alleged, and the patent is written such that the segmentation is the peer notes, that the content is on the peer notes. So you do not acknowledge that these are new arguments for us on appeal? I don't think that they're, I tried to frame it, I tried to get them in on what I thought that what y'all put before, I do understand now that you're saying that's not what you understood before, so to that extent, yes, Your Honor, then they are new arguments. What I'm trying to explain is that they're still consistent with this court's prior opinion because the content is the peer notes, and the peer notes require segmentation by traceroute. And so the peer notes require segmentation by traceroute as well. And so that's the only distinction, and the only, your prior opinions, Your Honor, stays exactly the same. The only thing here is, is it conventional, and it's not. Then we're talking about video files being the wholly different step, being segmented to being conventional. So it's a very different process. If I could, I'll reserve the rest of my time. That's certainly fine. Thank you very much. Mr. Dowler? Good morning, Your Honor. May it please the Court. My name is Michael Dowler, and I represent Collective Technology. I listened to the counsel's argument and your comments, and it's true, this case has always been about segmenting content with a traceroute. The first time I heard the argument about the case is really about segmenting peers with a traceroute was in their initial brief on this round for the appeal. I think if you look at the patent claims, they talk about segmenting content with a traceroute. The specification talks about the same thing. The second amendment complaint even talks about how they argued before the patent office that the novelty of their invention was using a traditional traceroute in an unconventional way to segment content. It was never about segmenting a peer. I don't even know how you would segment a peer. Well, he said the peer is the content. Well, yeah, I think the claim is very clear that the content is stored on the peer, like you said. So I said in the peer. Yes, exactly. And then on the first appeal where Judge Stark and Chief Judge Moore were here, Judge Etkin wasn't, Judge Lurie was, that was all about segmenting content with a traceroute, in fact. I think the decision was clear that that was one of the inventive aspects of these claims. If it were in any doubt, and it doesn't sound like it is, but if you were to look at the second amendment complaint in paragraph 20, it says the 452 patent claims all require segmenting the digital content according to the traceroute. That's paragraph 20 of the second amendment complaint. So, I mean, it's in all the evidence, but it's in the most important piece of evidence we've got, which is the second amendment complaint. So I do think it's true that the arguments that are directed to segmenting peers and not content is something new for the first time that's been briefed and has not been in this case ever before. Well, let me ask you, because I don't actually think that we need to take up too much more time on this, but what about the motion to amend? Why would it be futile, or why is there not an abuse of discretion in not allowing them to amend again? Well, first of all, they didn't even ask for leave to amend. But second of all, so the district court didn't get to consider whether or not they should have an opportunity to amend in light of any arguments that they had made. That said, if you look at the second amendment complaint and the district court judge's decision, he decided the case for two reasons. He dismissed for two really independent reasons, one of which is there was no plausible allegation that the content was segmented using a trace route. I think that's self-evident now. I mean, I think that they know that that's correct, and that's why they've come up with this new argument. But the second one is, when they amended the complaint to result at the second amendment of the complaint, they did that in the context of an earlier dismissal. So this is actually the third time the district court judge has dismissed the case. The first time is when we went on appeal on the first one, on the 101 issue. The second time is when we went back, and in light of this court's decision that segmenting had to be done with a trace route, we moved to dismiss. The district court looked at the first amendment complaint and said, yes, I don't see any allegation of segmenting at all, much less using a trace route. And the factual assertions in this collective white paper don't talk about segmenting and don't talk about using a trace route to segment. And so I'm going to dismiss the first amendment complaint, but give them yet another opportunity to amend. They amended, and that's where we came up with the second amended complaint. And in that second amended complaint, they said a couple of things. They said they did address the court's issue about no allegation of segmentation. They put in paragraphs 12 and 13 in the second amended complaint to talk about segmentation. Conventional segmentation, where they were just breaking up the data into chunks. Nothing about using a trace route. They tied in those paragraphs, those new paragraphs, with existing paragraphs that were in the first amended complaint, wherein they said, and this traditional segmenting that we're talking about here is the same prior art segmenting that we talked to the patent office about and distinguished our claims over. We told the patent office that, yes, there are trace routes in the prior art, but using these trace routes to segment the content is what made these claims patentable. And this court went through the same analysis in its first decision, recognizing that. And so those allegations are in the second amended complaint. So what the district court said is in the pleadings where they alleged segmenting using a trace route, they referred back to those new paragraphs, 12 and 13, and said, what's collective is you. The way collective is segmenting is using the conventional segmentation technique. Okay. Let me see if I can streamline this a little bit. So the narrow question in front of us, right, is whether they plausibly pled infringement of the trace routes limitation. That's really the whole ball of wax, isn't it? It's that and whether they admitted in their complaint that collective doesn't infringe because they don't segment using a trace route. If you look at paragraphs 35 and 44 in the second amended complaint, they say the way collective segments is using the traditional segmentation technique, which does not use a trace route. So not only did they not plead it, they pled themselves out of court by admitting that collective doesn't infringe. We don't have to reach that second question. You don't, but I think it does address why there shouldn't be another opportunity to amend. It's futile. They've already admitted that collective doesn't infringe. Okay. So if we conclude that they did not plausibly plead infringement of the trace routes limitation because we've got kind of like a little switcheroo going on here with what needs to be segmented, you know, the peer versus the content, that ends this case? Yes, it does. Okay. Do you have anything further? No, I don't. Thank you. Thank you, Your Honor. If it pleases the Court, just to go back real quick because maybe there is simply, I think, a fundamental misunderstanding of the terminology used. The peer nodes are the content. There's no question about that. The peer nodes are the content, but that doesn't exist in isolation. Content can't exist in isolation. Peer nodes are not content. Peer nodes are the nodes. The content is stored on the nodes. Yes, Your Honor. Yes. There's no question about that. But what is trace route? Trace route traces how these nodes travel around through the network, right, how they travel to different routers, how they travel through the Internet. That's what it would trace. It wouldn't trace the content individually. It traces the peer nodes. The peer nodes are what's carrying this content. So without the peer node, there is no content. So I think what we said in the first case, whether or not it was conveyed, what I'm saying now and what we're saying in this case are 100% the same, Your Honors. And I apologize if there was confusion. But there can't be a trace route without these peer nodes going somewhere because the content itself has to be in something to be traced. And that's exactly what the invention does is it segments that content by a trace route. That content is the peer nodes, is in the peer nodes. And we didn't say that was conventional. That was what the patent office found to be unconventional. And so that's what this court found to be unconventional in the last time. And if the court doesn't have any further questions, I would say one more thing, that the motion to amend that under the Ninth Circuit precedent not requested that this court, if they thought that we could clear of the publisher grant, lead to amend. And that's the case of Lopez v. Smith, 203 Fed 3rd, 1122. And, Your Honors, it's on page 15 of our blueprint. And with that, thank you very much, Your Honors. All right, I thank both counsel. This case is taken under submission.